406 S.E.2d 465

**Vernon JUBB, Delores Jubb, Alden Plummer, Virginia Plummer, Lawrence Hughes And Pauline Logsdon, Plaintiffs Below, Appellants,**

**v.**

**Robert LETTERLE and Mary Lou Letterle, His wife, Defendants Below, Appellees.**

**No. 19622.**

Supreme Court of Appeals of West Virginia.

Submitted May 8, 1991.

Decided June 27, 1991.

---

Anthony Halkias, Charleston, Jack C. Barr, Keyser, for appellees.

Edward Rebrook III, Charleston, David H. Webb, Keyser, for appellants.

PER CURIAM:

This is an appeal by Vernon Jubb, Delores Jubb, Alden Plummer, Virginia Plummer, Lawrence Hughes, and Pauline Logsdon from a final order of the Circuit Court of Mineral County entered on September 7, 1989. The lower court awarded judgment in favor of the appellees, Robert and Mary Lou Letterle, and found that certain restrictive covenants were not applicable to an entire tract of land being subdivided by the appellees. The appellants contend that such restrictive covenants must be applicable to the entire tract of land in question. We agree with the appellants' contentions and reverse the decision of the Circuit Court of Mineral County.

I

On June 14, 1979, the appellees purchased approximately 131 acres of property in Mineral County, West Virginia. The appellees subsequently sold a portion of that property, retaining approximately 42 acres for the development of a subdivision originally identified as Mountainaire Village. On February 14, 1982, Stultz and Associates, Inc. ("Stultz") submitted proposed engineering drawings depicting the roads, water lines, sewer lines, lots, and layout to be encompassed by Mountainaire Village. The appellees placed restrictive covenants on file with the Mineral County Clerk's Office, Deed Book 230, page 316, on October 19, 1982. This document indicated that the restrictive covenants would be applicable to Mountainaire Village and referenced the plat map of February 14, 1982, by Stultz as the scope and character of Mountainaire Village.[1] No plat map or drawing, however, was placed on file.

The appellees contend that they modified the originally intended scope of Mountainaire Village and significantly reduced this initial conception of layout, design, and number of lots. These alterations, according to the appellees, occurred from fall 1982 through spring 1983, prior to the sale of any lots in Mountainaire Village. Appellants Hughes and Logsdon purchased their lot on May 3, 1983. Their deed referred specifically to restrictive covenants placed on file in the Mineral County Clerk's Office and stated explicitly that the lot would be subject to those restrictive covenants. On May 5, 1983, two days after that purchase, the appellees signed an underground service agreement with Potomac Edison Power Company to provide electricity to the residential subdivision designated Mountai-

---

**1.** The pertinent portions of the restrictive covenants provided that the homes to be placed on the lots within Mountainaire Village were to be at least 980 square feet in dimension and were to cost $20,000 plus a 5% increase for each year after 1982. Only single family dwellings were to be erected on any single lot, and the lots were to be used exclusively for residential purposes. The covenants also contained restrictions regarding the placement of homes or buildings on the lots with limitations of distances between the front and side lines of the lots. The exterior woodwork of the houses and buildings was to be painted with two coats of paint, varnish, or stain within six months after completion. No residence was to be constructed with concrete block unless it was "covered with a veneer of stone, brick or other finish quality material of similar nature." No mobile home or building with an exposed carriage and wheels was to be placed on any lot, and no truck larger than 3/4 ton pickup was to be left in the Addition overnight.

The restrictive covenants were placed on file for the designated "purpose of keeping said Addition desirable, uniform and suitable in architectural design and use as herein specified...." The covenants also provided that "[a]ll and each of the restrictions herein contained shall be perpetual and shall apply to and be forever binding upon the Grantee, his heirs, executors, administrators, and assigns in each of the lots and tracts contained in said Addition, as a general plan for the benefit of said Addition."

naire Village. In the plat attached to that agreement, however, Mountainaire Village was designated as only sites 1 through 15 and 80 through 84, significantly reduced from the original conception indicated on the February 14, 1982, Stultz map.

Appellants Mr. and Mrs. Jubb purchased their lot on January 20, 1984, by deed making no reference to the restrictive covenants placed on file with the Mineral County Clerk's Office. Appellants Mr. and Mrs. Plummer, however, purchased their lot on December 20, 1984, by deed specifically referencing the restrictive covenants. The appellees explain that of the eleven parcels sold prior to the institution of this action, six were sold with reference to the restrictive covenants and five were sold without such reference. By June 1987, the appellees were advertising the remaining lots of the subdivision for sale without reference to the restrictive covenants. The appellants consequently brought an action in the Circuit Court of Mineral County to enforce the application of the restrictive covenants to the entire subdivision. The lower court held that the restrictive covenants did not apply to the entirety because there was no common plan or general scheme to restrict all the lots within the subdivision.

## II

■ In syllabus point 1 of *Wallace v. St. Clair*, 147 W.Va. 377, 127 S.E.2d 742 (1962), we explained the following:

Where the owner of land divides it into lots in pursuance of a general plan for the development of an exclusively residential area and conveys the several lots to different grantees by deeds containing identical or substantially similar covenants restricting the use of the lots to residential purposes, an action in the nature of a suit in equity may be maintained by an owner of one of such lots against the owner or owners of any other lot to compel compliance with the restriction.

Furthermore, in syllabus point 3 of *Wallace*, we stated:

Where the owner of land divides it into lots in pursuance of a general plan for the development of an exclusively residential area and conveys the several lots to different grantees by deeds containing identical or substantially similar covenants restricting the use of the lots to residential purposes, such restriction must be construed, in the light of the surrounding circumstances and the obvious purpose sought to be achieved, so as to ascertain the true intent thereof as expressed in the language employed. Such restriction is valid, not violative of public good, inimical to the public policy or subversive to the public interests. The resulting right of the owner of each lot to enforce the restriction against the owner of every other lot is a substantial and valuable right, and the owner of any lot should not be denied the right to enforce such restriction by estoppel, waiver or abandonment unless upon a clear showing and for cogent reasons.

■ " 'The fundamental rule in construing covenants and restrictive agreements is that the intention of the parties governs. That intention is gathered from the entire instrument by which the restriction is created, the surrounding circumstances and the objects which the covenant is designed to accomplish.' *Wallace v. St. Clair*, 147 W.Va. 377, 390, 127 S.E.2d 742, 751 (1962)." Syl.Pt. 2, *Allemong v. Frendzel*, 178 W.Va. 601, 363 S.E.2d 487 (1987); *see also McIntyre v. Zara*, 183 W.Va. 202, 394 S.E.2d 897 (1990).

■ The appellants contend that the appellees evidenced a common scheme or general plan to restrict all lots within Mountainaire Village by placing the restrictive covenants on file. The appellants further contend that the appellees informed them prior to their purchases that the restrictions would be applicable to the entire development.

The appellees, however, contend that they did not place the February 14, 1982, Stultz maps on file with the restrictions because the scope of Mountainaire Village depicted on that map was not their final intention for the development. The appellees also maintain that there was some confusion on the part of the appellants with

regard to the "restrictions" being referenced at any given time. The appellants, for instance, insist that the appellees told them that "restrictions" would be applicable. However, two separate documents were referenced generally as "restrictions." First, the February 14, 1982, restrictive covenants could be referred to as "restrictions." Second, the general rules and regulations governing the development could be referred to as "restrictions." [2]

The appellees contend that their statements regarding the application of "restrictions" to the entire development referred only to the rules and regulations rather than the formally filed restrictive covenants. Moreover, the appellees maintain that the appellants did not even learn of the existence of the restrictive covenants until they began considering this underlying civil action. The appellees further contend that any alleged oral representations are irrelevant to this inquiry since the Statute of Frauds, W.Va.Code § 36–1–3 (1985),[3] bars evidence regarding oral agreements creating easements in the nature of restrictive covenants. *See, e.g., Bennett v. Charles Corp.*, 159 W.Va. 705, 226 S.E.2d 559 (1976); *Cottrell v. Nurnberger*, 131 W.Va. 391, 47 S.E.2d 454 (1948).

We do not specifically address the issue of the applicability of the statute of frauds because we decide this matter without reliance upon any oral representations allegedly made by either party. The act of placing the restrictive covenants on file evidenced a common scheme to enforce the restrictive covenants upon the lot owners. The restrictive covenants referred to the February 14, 1982, Stultz drawing, and such drawing was produced during discovery. The existence of the restrictive covenants was easily ascertainable by any individual conducting a title search in preparation to purchase a lot in Mountainaire Village.[4] Furthermore, the restrictive cov-

enants remained on file throughout the appellants' purchases and were consequently specifically binding upon the owners whose deeds referenced those restrictions. Thus, whether through actual or constructive notice, any potential purchaser would have been aware of the restrictive covenants.

The Supreme Court of Virginia encountered a situation similar to the present case in *Minner v. City of Lynchburg*, 204 Va. 180, 129 S.E.2d 673 (1963). In *Minner*, owners of lots in a subdivision brought an action to enforce a specific restrictive covenant. The court found that the grantor had intended to create a scheme or plan of development to restrict the entire subdivision. The court concluded, applying reasoning similar to that of this Court in *Wallace*, that the grantees had acquired, by implication, an equitable right to enforce the restrictions against property retained by the grantor or even property subsequently sold without the restrictions where the purchaser had actual or constructive notice of the restrictions. *Minner*, 129 S.E.2d at 679.

In the present case, we conclude that it was the intention of the appellees, upon placing the restrictive covenants on file, to create a general plan or common scheme of development restricting the usage of all lots within the subdivision for the mutual benefit of all owners. We further hold that each individual owner purchasing property within the area originally designated Mountainaire Village, as depicted in the February 14, 1982, Stultz drawing, acquired a right to enforce the restrictive covenants against any other owner or owners. Consequently, we reverse the decision of the Circuit Court of Mineral County.

Reversed.

**2.** The rules and regulations were distributed to the purchasers as general guidelines of behavior, including standard provisions regarding garbage collection, maintenance, fencing, pets, speed limits, noise, clotheslines, etc.

**3.** West Virginia Code § 36–1–3 provides, in pertinent part, that "[n]o contract for the sale of land ... shall be enforceable unless the contract ... be in writing...."

**4.** The parties have stipulated that the restrictive covenants are indexed in Mineral County under Letterle in the L Book and under Mountainaire Village in the M Book.