411 S.E.2d 684

**Sue Proctor MILLER, Curtis Atkinson and Kathryn Atkinson, Appellants,**

v.

**Melvin D. BOLYARD and Martha Frances Bolyard, Appellees.**

**No. 20071.**

Supreme Court of Appeals of
West Virginia.

Submitted Sept. 11, 1991.

Decided Nov. 20, 1991.

Thomas C. Evans, III, Adams, Fisher & Evans, Ripley, for appellants.

H. Beth Sears, Hancock & Sears, Ravenswood, for appellees.

PER CURIAM:

Sue Proctor Miller, Curtis Atkinson and Kathryn Atkinson appeal a decision by the Circuit Court of Jackson County refusing to enforce building and use restrictions upon the real estate of their neighbors, Melvin D. Bolyard and Martha Frances Bolyard. The circuit court held either that the restrictive covenants for First Miller Addition, the subdivision where the parties live, were too vague to be enforceable, or that no violation of the covenants had occurred or, if a violation had occurred, that Mr. and Mrs. Atkinson had waived the covenants. Because the evidence shows that the covenants are not too vague to be enforced, were violated and were not waived, we reverse the decision of the circuit court.

First Miller Addition, created in 1964 by Sue Proctor Miller, is a residential subdivision consisting of about 26 lots located approximately a half mile from the Town of Ravenswood. When Ms. Miller conveyed the subdivision's first lot to Victor Clarkson on March 6, 1964, the deed contained nineteen restrictive covenants. All other deeds for the subdivision's lots were expressly made subject to the restrictions contained in the Clarkson deed. The following are the relevant restrictive covenants:

> 3. That the structures erected on said lots shall be used for residence purposes only exclusive of any other use whatsoever; ...
>
> 7. That the lot shall be used for construction of only one dwelling; the nature of which construction is limited to a single family residence;
>
> 8. That the dwelling erected on said lot shall not exceed two (2) stories in height, nor shall the same be provided with a private garage which exceeds two (2) automobiles in capacity; ...
>
> 10. That any garage or outbuilding permitted by these restrictions, wheth-

er or not attached to the principal dwelling, shall be of the same design and material as the principal dwelling;
. . . .

The Atkinsons' house faces East and is located on two and a half contiguous lots that were purchased in 1971 and 1974. The Bolyards' house faces West and is located catty-corner from Mr. and Mrs. Atkinsons' house. Mr. and Mrs. Bolyard also own the lot directly behind their house and next to Mr. and Mrs. Atkinsons' house. Both lots owned by Mr. and Mrs. Bolyard were purchased in 1964.

The current dispute began in 1988 when Mrs. Bolyard began operating a beauty shop in her house and when she and her husband constructed a large garage (24 feet wide, 40 feet long and 18 feet high) on the lot next to the Atkinsons' house. The garage is about 185 feet behind the Bolyards' house, but is only 27 feet from the Atkinsons' house. The following items are stored in the garage: a camping trailer, a utility trailer, an all-terrain vehicle, a ¾ ton truck, a riding tractor and other small items.

The subdivision contains one other large garage, which is located on the same lot as the house. Mr. and Mrs. Atkinson did not object to the other garage. However, the other garage is approximately 150 yards from the Atkinsons' house, and is partially hidden because it is below the level of the road.

Mr. and Mrs. Atkinson sought an injunction to prohibit the use of the Bolyards' house as a beauty shop and to remove the Bolyards' garage. During the trial, Mr. and Mrs. Bolyard alleged that Mr. Atkinson had a car restoration business in his basement. However, Mr. Atkinson maintains that he works only on the cars of relatives and friends and receives no compensation.[1] There is also evidence that another subdivision resident prepares tax returns in his house.

Based on the evidence, the circuit court refused to enforce the restrictive covenants against the garage because he found that the covenants were either too vague or that Mr. and Mrs. Atkinson had waived the restrictions. The circuit court also found that Mr. Atkinson's car restoration business was similar to Mrs. Bolyard's beauty shop and, therefore, declined to prohibit Mrs. Bolyard's beauty shop. Finally, the circuit court awarded $1,200 in damages to Mr. and Mrs. Bolyard for the improvident issuance of the temporary injunction, although the injunction bond was $500. Mr. and Mrs. Atkinson then appealed to this Court.

I

■ In *Allemong v. Frendzel*, 178 W.Va. 601, 363 S.E.2d 487, 491 (1987), we noted that restrictive covenants are strictly construed against the grantor "because the unrestricted use of property by the owner is favored. . . ." *See Wallace v. St. Clair*, 147 W.Va. 377, 387, 127 S.E.2d 742, 750 (1962); *Allred v. City of Huntington*, 175 W.Va. 130, 331 S.E.2d 861, 862 (1985); *Ballard v. Kitchen*, 128 W.Va. 276, 282, 36 S.E.2d 390, 393 (1945). However strict construction may only be used in cases of ambiguity. *Allemong, supra* 178 W.Va. at 605, 363 S.E.2d at 491.

■ " 'The fundamental rule in construing covenants and restrictive agreements is that the intention of the parties governs. That intention is gathered from the entire instrument by which the restriction is created, the surrounding circumstances and the objects which the covenant is designed to accomplish.' *Wallace v. St. Clair*, 147 W.Va. 377, 390, 127 S.E.2d 742, 751 (1962)." Syllabus Point 2, *Allemong, supra. In accord*, Syllabus Point 3, *Jubb v. Letterle*, 185 W.Va. 239, 406 S.E.2d 465 (1991).

■ In the present case, at least one of the restrictive covenants prohibits the Bolyards' garage. Covenant number 8 gives a general size prohibition, namely that a garage is not to exceed "two (2) automobiles in capacity," and the evidence

---

**1.** From 1983 until 1987, Doug Atkinson, Mr. and Mrs. Atkinson's son, did restore cars for compensation. Most of the work was done outside the subdivision, but the painting was done in the Atkinsons' basement garage.

shows the Bolyards' garage contains two trailers, a truck, an all-terrain vehicle and other smaller items. Covenant number 10 requires that the garage have a design similar to the house. The Bolyards' garage has aluminum siding and the Bolyards' house is brick with aluminum siding on the back. Covenant number 7 limits each lot to one residential dwelling, and the Bolyards have their garage on their extra lot. Although we do not find a clear violation of design restriction or residence limitation (the Bolyards appear to have merged their two lots), we do find that the size restriction is not too vague to be enforced in this case and that the Bolyards' garage exceeds the size restriction.

Next, Mr. and Mrs. Bolyard argue that the size restriction should not be enforced against them because Mr. and Mrs. Atkinson did not object to a similar large garage in the subdivision. However, the other garage, located about 150 yards away from the Atkinsons' house, does not directly affect Mr. and Mrs. Atkinson. In Syllabus Point 4, *Wallace, supra,* we said:

> The willingness of some lot owners in an area restricted to residential purposes to waive the benefit of the restriction does not preclude others from insisting upon its observance; nor is any lot owner precluded from insisting upon such observance because of his failure to complain of violations of the restriction by other property owners in a different portion of the restricted area, which were not consequential or, if consequential, did not materially and adversely affect him in the use and enjoyment of his own property.

We find that Mr. and Mrs. Atkinsons' failure to object to the other garage, does not bar them from objecting to this subsequent, material violation of the size restriction.

## II

Finally, Mr. and Mrs. Atkinson maintain that the operation of a beauty shop in the Bolyards' house is a violation of covenant number 3, which limits use to "residence purposes only exclusive of any other use whatsoever." Mr. and Mrs. Bolyard maintain that this residential use limitation should not be enforced because of changes in the neighborhood as shown by the existence of other cottage industries, including Mr. Atkinson's car restoration business.

Although changes can "nullify restrictive covenants affecting property within the neighborhood," (*Allemong, supra* 178 W.Va. at 606, 363 S.E.2d at 492) the changes must be "so radical as practically to destroy the essential objects and purposes of the agreement." *Allemong, id.* 178 W.Va. at 606, 363 S.E.2d at 492 (quoting *Wallace, supra* 147 W.Va. at 399, 127 S.E.2d at 757). *See also,* Syllabus Point 1, *Morris v. Nease,* 160 W.Va. 774, 238 S.E.2d 844 (1977).

In the present case, the evidence does not show neighborhood changes so radical as to nullify the residential restriction. Neither the Atkinsons' use of their basement garage occasionally to paint cars or another neighbor's seasonal use of his house to prepare tax forms, shows a radical change in the residential character of the neighborhood. Neither of these activities presents the same commercial use as a beauty shop, which is essentially a store with regular activities and traffic.

Finally, Mr. and Mrs. Bolyard argue that Mr. and Mrs. Atkinson, because of their car restoration business, are precluded from seeking the prohibition of Mrs. Bolyard's beauty shop. However, Mr. Atkinson testified that he restores cars as a hobby and not as a business. Mr. Atkinson acknowledged that his son had been paid for some of the car painting done in the Atkinsons' basement garage. However, in 1987 after the son graduated from college and moved away, all business activity stopped.

Based on the unrefuted testimony of Mr. Atkinson, we find no reason to bar Mr. Atkinson from seeking to enforce the covenant restricting the subdivision to "residential purposes." Therefore, we find that the operation of the beauty shop in the Bolyards' house is a violation of the restrictive covenants and that Mr. and Mrs. At-

kinson are not barred from seeking enforcement of the covenant.[2]

For the above-stated reasons, the decision of the Circuit Court of Jackson County is reversed, and the case is remanded for further proceedings consistent with this opinion.

Reversed and remanded.

**2.** Because the decision of the circuit court is reversed, we need not consider the assignment of error concerning the award of damages in excess of the injunction bond.