446 S.E.2d 182

**Vernon JUBB, Delores Jubb, Alden Plummer, Virginia Plummer, Lawrence Hughes and Pauline Logsdon, Plaintiffs Below, Appellants,**

v.

**Robert LETTERLE and Mary Lou Letterle, Defendants Below, Appellees.**

No. 21615.

Supreme Court of Appeals of West Virginia.

Submitted March 1, 1994.

Decided June 16, 1994.

---

David H. Webb, Staggers, Staggers & Webb, Keyser, for appellants.

Jack C. Barr, Barr & James, Keyser, for appellees.

PER CURIAM:

In this appeal from orders of the Circuit Court of Mineral County, West Virginia, the appellants contend that the circuit court erred in determining that the appellees are not in contempt of this Court's ruling in *Jubb v. Letterle*, 185 W.Va. 239, 406 S.E.2d 465 (1991) (hereinafter "*Jubb* I"). The circuit court determined that certain restrictive covenants were binding on an area subdivided or indicated for future development of a subdivision known as Mountainaire Village. However, it also held that a small area of the land is not bound by these restrictions because it is almost completely blocked off from the rest of the subdivision by a parcel of land which is not bound by these restrictions. This Court has before it the petition for appeal and the briefs and arguments of counsel. For the reasons stated below, the decision of the circuit court is affirmed.

I

The appellees, Robert E. and Mary Lou Letterle, designated approximately forty-two acres of land for the development of a subdivision to be known as Mountainaire Village, in Mineral County, West Virginia. A plat designed by the engineering firm of Stultz & Associates, Inc., on February 17, 1982, depicted the roads, water and sewer lines, lots and layout to be encompassed by the subdivision. The appellees placed restrictive covenants on file with the Mineral County Clerk's office,[1] indicating that these covenants would be applicable to Mountainaire Village and referencing the February 17, 1982 plat as the scope and character of Mountainaire Village. The stated purpose of these covenants was to keep the subdivision "desirable, uniform and suitable in architectural design[.]"

When appellants Lawrence Hughes and Pauline Logsdon and appellants Alden and Virginia Plummer purchased lots from the appellees in May, 1983, and December, 1984, respectively, their deeds referred specifically to the restrictive covenants on file with the Mineral County Clerk's office. Conversely, in January, 1984, when appellants, Vernon and Delores Jubb, purchased their lot from the appellees, their deed made no reference to these restrictions.

By June, 1987, the appellees were advertising the remaining lots of the subdivision for sale without reference to the restrictive covenants. Consequently, the appellants brought an action in the Circuit Court of Mineral County to enforce the application of the restrictive covenants to the entire subdivision. The circuit court held that the restrictive covenants did not apply to the entirety because there was no common plan or general scheme to restrict all the lots within the subdivision. However, in *Jubb* I, we reversed, holding that

"it was the intention of the appellees, upon placing the restrictive covenants on file, to create a general plan or common scheme of development restricting the usage of all lots within the subdivision for the mutual benefit of all owners. [And further] that

---

1. The restrictive covenants provided, in relevant part, that only single family dwellings were to be erected on any single lot, and the lots were to be used exclusively for residential purposes. The homes were to cost $20,000 plus a 5% increase for each year after 1982 and were to be at least 980 square feet in dimension. The covenants also contained restrictions regarding the placement of buildings on the lots with limitations of distances between the front and side lines of the lots. The exterior woodwork of all homes and buildings were to be painted with two coats of paint, varnish, or stain within six months after completion and the exterior of any residence was to be completed within six months after construction is commenced. Residences were not to be constructed with concrete block unless covered with a veneer of stone, brick or material similar in nature. No mobile home or building with exposed carriage or wheels shall be placed on any lot. Further, "[n]o part of said premises shall be used or occupied injuriously to affect the use, occupation, or value of the adjoining or adjacent premises for residences purposes," and "[n]o billboards, sign boards (except suitable signs for sale of site) or unsightly objects of any kind shall be maintained on said site."

each individual owner purchasing property within the area originally designated Mountainaire Village, as depicted in the February 14, 1982,[2] Stultz drawing, acquired a right to enforce the restrictive covenants against any other owner or owners."

*Id.* 406 S.E.2d at 469. (footnote added). Subsequent to this Court's decision in *Jubb* I, the appellees conveyed a parcel of six-tenths of an acre to David Bohn, on which he later constructed a chiropractic clinic. This parcel was subject to restrictions similar to those of Mountainaire Village, but without the residential prohibition.[3] The parcel purchased by Mr. Bohn, located in the northwest corner of the forty-two acre parcel previously owned by the appellees, was separated from the remainder of the forty-two acres by two tracts owned by Thomas and William Yaider. It is undisputed that the Yaider property was never owned by the appellees and is subject to no restrictive covenants. In between the Yaider property and the appellants' property lies a parcel of land shown upon the Mountainaire Village plat as a "Restricted Area," on which there is a maintenance building, a well and pump house building and a sewage treatment plant.

The appellants subsequently filed a contempt of court petition against the appellees, alleging that the chiropractic clinic constructed by Mr. Bohn does not comply with the restrictive covenants relating to the forty-two acres and, therefore, contravenes this Court's decision in *Jubb* I. The circuit court, upon examination of the February 17, 1982 plat, disagreed. It considered the topography of the land, our decision in *Jubb* I, the Bohn property and the chiropractic clinic constructed thereon. In that the Bohn property is almost completely blocked off by the Yaider property from the rest of the residential lots in Mountainaire Village, the circuit court found that the restrictive covenants which apply to Mountainaire Village *do not* apply to the Bohn property.[4] It is from this ruling that the appellants now appeal.[5]

## II

■ The primary issue on appeal to this Court is whether the six-tenths of an acre purchased by Mr. Bohn, on which he has constructed a chiropractic clinic, is subject to the restrictive covenants. It is the appellants' position that this Court, in *Jubb* I, intended that the restrictive covenants apply to the *entire* forty-two acres of land previously owned by the appellees. Conversely, the appellees argue and the circuit court agreed, that the restrictive covenants apply *only* to the area originally designated as Mountainaire Village, as depicted in the Stultz drawing of February 17, 1982. According to the appellees and the circuit court, in that the Stultz drawing does not label the Bohn property as part of Mountainaire Village nor designates that land for the future development

---

**2.** In *Jubb* I, the Stultz drawing was incorrectly dated February 14, 1982. The actual date of the plat drawing is February 17, 1982.

**3.** Among the restrictions were that "[n]o part of said premises shall be used or occupied injuriously to affect the use, occupation, or value of the adjoining or adjacent premises for residences [sic] purposes."

**4.** In its order of March 20, 1992, the circuit court stated:

> In equity and good conscience, this Court believes a line should be drawn extending the westerly boundary of lot number twenty-three in this subdivision and this line would extend past the Yaider property at its most easterly line and point and run to the platted and identified roadway area lying to the north of this land, possibly on the northern boundary of the land owned by the [appellees].
> All land lying to the west of this drawn line will not have the restrictions and covenants

applying to the Mountainaire Village. This Court would further note that the call of the Yaider property which is N. 41 [degrees] 35'E, a distance of 50.50 feet, shall be extended from the end of the Yaider property until it intersects with the existing main road right-of-way into Mountainaire Village Subdivision. All property lying to the west of that line shall be unrestricted as applies to the covenants and conditions applicable to the lots in Mountainaire Village.

**5.** The circuit court also determined that, under equitable principles of law, the "Restricted Area," described above, is to be used in its present condition, that is, as a well and pump house, maintenance building and sewage treatment plant. However, the circuit court indicated that, should the "Restricted Area" ever change, such changes must comply with the restrictive covenants of the Mountainaire Village.

of Mountainaire Village, the restrictive covenants do not apply.

In syllabus point 3 of *Jubb* I, we reiterated that:

' "The fundamental rule in construing covenants and restrictive agreements is that the intention of the parties governs. That intention is gathered from the entire instrument by which the restriction is created, the surrounding circumstances and the objects which the covenant is designed to accomplish." *Wallace v. St. Clair,* 147 W.Va. 377, 390, 127 S.E.2d 742, 751 (1962).' Syl. Pt. 2, *Allemong v. Frendzel,* [178] W.Va. [601], 363 S.E.2d 487 (1987).

As we indicated above, we held, in *Jubb* I, that "it was the intention of the appellees, upon placing the restrictive covenants on file, to create a general plan or common scheme of development restricting the usage of all lots within the subdivision for the mutual benefit of all owners." 406 S.E.2d at 469. In the statement that followed, we further defined which land previously owned by the appellees was to be restricted: "each individual owner purchasing *property within the area originally designated Mountainaire Village, as depicted in the February 14, 1982, [sic] Stultz drawing,* acquired a right to enforce the restrictive covenants against any other owner or owners." *Id.* (emphasis added).

The February 17, 1982 Stultz drawing, which depicts the area to be known as Mountainaire Village and which designates areas for future development of that subdivision,

does not include the property purchased by Mr. Bohn. The Bohn property is separated a good distance from the appellants' property by sloping terrain and is not visible from the appellants' property. It is evident that by "redrawing" the property lines,[6] the circuit court more precisely determined which land is and is not subject to the restrictive covenants. In so doing, the circuit court attempted to reach a common-sense decision which does not conflict with our decision in *Jubb* I and which may preclude future litigation regarding the applicability of the restrictive covenants. We agree with the circuit court's conclusion that the restrictive covenants placed on file in the Mineral County Clerk's office apply to the area depicted in the February 17, 1982 Stultz drawing as Mountainaire Village, which does not include the Bohn property.

For the reasons stated above, the circuit court correctly held that the six-tenths of an acre purchased by Mr. Bohn was not intended to be a part of Mountainaire Village and was, therefore, not subject to the restrictive covenants. Accordingly, the decision of the Circuit Court of Mineral County is affirmed.[7]

Affirmed.

---

6. *See* n. 4, *supra.*

7. The appellees also argue that the appellants' petition for appeal was not timely filed. In light

of our resolution of this case, it is not necessary for us to address that issue.