# IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

Spring 2026 Term

**FILED**

**June 10, 2026**

released at 3:00 p.m.
ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

_____

No. 25-ICA-279

_____

HARVEY BELLOMY and NANCY BELLOMY
Defendants and Counter-Plaintiffs Below, Petitioners,

v.

FALCON RIDGE UNIT OWNERS' ASSOCIATION, INC.,
Plaintiff and Counter-Defendant Below, Respondent.

_____

Appeal from the Circuit Court of Mercer County
Honorable Mark Wills, Judge
Civil Action No. CC-28-2023-C-59

REVERSED AND REMANDED

_____

Submitted: March 3, 2026
Filed: June 10, 2026

Mark A. Sadd, Esq.                          Ronald N. Walters, Jr., Esq.
John F. Gianola, Esq.                       Beverly Hall, Esq.
Lewis Gianola PLLC                          Walters Law Firm, PLLC
Charleston, West Virginia                   Charleston, West Virginia
Counsel for Petitioners                     Counsel for Respondent

CHIEF JUDGE GREEAR delivered the Opinion of the Court.

JUDGE WHITE dissents and reserves the right to file a separate opinion.

GREEAR, Chief Judge:

Petitioners Harvey Bellomy and Nancy Bellomy ("Bellomys") appeal the April 4, 2025, order of the Circuit Court of Mercer County awarding declaratory judgment to Respondent Falcon Ridge Unit Owners' Association, Inc., ("Falcon Ridge")[1] and the June 30, 2025, order denying the Bellomys' motion for relief pursuant to Rule 59 of the West Virginia Rules of Civil Procedure. On appeal, the Bellomys argue that the circuit court abused its inherent judicial power and further erred by failing to apply the clear language of the deeds at issue; failing to properly apply the Uniform Common Interest Ownership Act ("Uniform Act")[2] and West Virginia Code § 36-3-11 (2020); and failing to make findings of fact and conclusions of law sufficient to permit appellate review. Based upon our review of the record and applicable law, we find that the circuit court erred in its application of the Uniform Act, and it failed to apply the clear language of the deeds at issue. Accordingly, we reverse the circuit court's April 4, 2025, and June 30, 2025, orders and remand this case to circuit court for further proceedings consistent with this decision.

## I. FACTUAL AND PROCEDURAL BACKGROUND

---

[1] The names Falcon Ridge Unit Owners' Association, Inc., and Falcon Ridge Homeowners' Association, Inc., are used interchangeably by the parties on appeal. Falcon Ridge Unit Owners' Association, Inc., is the name of the entity listed on the Notice of Appeal and in the two orders on appeal.

[2] The Uniform Act is codified in West Virginia Code §§ 36B-1-101 to 36B-4-120.

The underlying case arises from a dispute concerning ownership of several lots within the planned community of Falcon Ridge in Mercer County, West Virginia.[3] The Bellomys are property owners who reside in Falcon Ridge and claim, in addition to the lot upon which their residence is situated, that they own free of any homeowners restrictions and fees, several other lots within Falcon Ridge, a portion of the real property used by Falcon Ridge as streets and a community nature park, and the property housing Falcon Ridge's entrance sign.

In November of 1992, Bluewell Development Corporation deeded the land described in Microfilm Plat 6995 ("Plat 6995") to Shoemaker Construction Company, Inc. ("SCC").[4] On September 28, 1994, SCC recorded a *Declaration of Covenants and Restrictions for Falcon Ridge* ("Falcon Ridge DCR"), pursuant to the Uniform Act, for the purpose of creating a forty-nine (49) unit subdivision, subject to certain covenants, restrictions, and conditions, within the boundaries outlined in Plat 6995.[5]

---

[3] Per Falcon Ridge, it "was advertised as a planned country estate community consisting of fifty wooded home sites, a breath-taking view, paved wide community streets, public underground utilities, community nature park, impressive community entrance, and street lighting throughout the planned community."

[4] Plat 6995 was recorded in the Office of the Clerk of the County Commission of Mercer County, West Virginia, and contained 124 lots, including Tracts A, B, & C.

[5] The Falcon Ridge DCR was filed with the Clerk of the County Commission of Mercer County, West Virginia. Section 4.1 of the Falcon Ridge DCR reserved the right to create more units as portions were added to the subdivision.

By Deed dated September 18, 2007, SCC transferred certain lots and streets contained within Plat 6995 to Falcon Ridge. Specifically, SCC's deed conveyed

> [a]ll of [SCC's] right, title and interest in and to the western portion of Lot 94 over which the right-of-way from Circle Drive presently exists, together with the platted portion of the right-of-way of Hastings Street from its intersection with the western line of Saxton Street to the north-west corner of Lot 25 and to the northeast corner of Lot 90 to the northwest corner of Lot 102, and all of Saxton Street.

Subsequently, on February 27, 2008, SCC deeded the remaining property contained in Plat 6995 to Mark Shoemaker and Rhonda Shoemaker, jointly, with rights of survivorship. From 1994 through 2021, SCC and Mark Shoemaker and Rhonda Shoemaker, deeded certain lots contained in Plat 6995 to various different individuals.[6] Some of these deeds included language subjecting the conveyance to the Falcon Ridge DCR, while others did not include such language.

On October 27, 2020, Mark Shoemaker, by his attorney-in-fact, Mark T. Shoemaker, Jr., deeded the property subject to this litigation to the Bellomys. Specifically, the October 27, 2020, deed conveyed "Lots 26-42, inclusive, Lots 44-54, inclusive, Lots 63-67, inclusive, Lots 89, 90, 91 and Tracts A, B, and C[.]" The deed further conveyed all rights and interest in "Hastings Street, situate between Lots 89 and 103 as shown on said

---

[6] Mark Shoemaker and Rhonda Shoemaker were divorced at some point following the 2007 deed. Via a deed dated June 27, 2011, Rhonda L. Rae (formerly Rhonda Shoemaker) deeded all remaining property in Plat 6995 to Mark Shoemaker individually via her attorney-in-fact, Jill Szakacs.

plat, and an un-named street situate between Lots 63, 64, 65 and Tracts A and B and Hastings Street between Lots 26 and 52 to its terminus at Lot 43."[7] By subsequent deed dated September 28, 2021,[8] Mark T. Shoemaker, Jr., and Alisha Shoemaker Sudderth, sole heirs of Mark Shoemaker, deeded to the Bellomys "Lots 26-42, inclusive, Lots 44-54, inclusive, Lots 63-67, inclusive, Lots 89, 90, 91, 94 and Tracts A, B, and C[.]" This deed

> excepted and reserved from Lot 94, the western portion thereof over which the right-of-way from Circle Drive presently exists, together with the platted portion of the right-of-way of Hastings Street from its intersection with the western line of Saxton Street to the northwest corner of Lot 25 and to the northeast corner of Lot 90 to the northwest corner of Lot 102 and all of Saxton Street.

The September 28, 2021, deed further conveyed to the Bellomys all rights and interest in "Hastings Street, situate between Lots 89 and 103 as shown on said plat, and Somerset Lane from Saxon Street to its terminus at Lots 66 and 67, and the Plat Road between Lot 94 and Lot 19 from Circle Drive to Hastings Street, and Hastings Street between Lots 26 and 52 to its terminus at Lot 43."[9]

Following their purchase of the lots at issue, the Bellomys reportedly "informed the residents of Falcon Ridge that said lots [and all the roads within Falcon

---

[7] Per Falcon Ridge, the October 27, 2020, deed included the last remaining vacant lots within Falcon Ridge and contained no homes.

[8] The September 28, 2021, deed is titled and referenced throughout the briefings as a "Deed of Correction."

[9] The effect of the September 28, 2021, Deed of Correction was adding Lot 94 to the conveyance from the Shoemakers to the Bellomys.

Ridge] belonged to them and that residents were" to refrain from entering said property. Additionally, the Bellomys then moved "a large [tractor-trailer] cargo trailer onto Lots 89 and 90[,]" constructed a barbed wire fence upon their property, and fenced off the entrance to Somerset Lane (a roadway within Falcon Ridge), in apparent contravention of the Falcon Ridge DCR. Further, the Bellomys were alleged to have advised "the Falcon Ridge community that all of Lot 94[,]" upon which the community nature park and Falcon Ridge entryway were located, belonged to the Bellomys and that other Falcon Ridge residents "were to refrain from going onto the property."

On April 4, 2023, Falcon Ridge filed the underlying Complaint for Declaratory Judgment against the Bellomys requesting declaratory relief as follows:

(1) That Lot 94 is a common element and owned by [Falcon Ridge];

(2) That the Falcon Ridge entrance sign and the land that the sign rests upon is a common element and owned by [Falcon Ridge];

(3) The [Falcon Ridge DCR] appl[ies] to Lots 52, 53, 54, 89, 90 and 91 owned by [the Bellomys];

(4) That the street known as Saxon Place (which consists of Circle Drive, Hastings Street, Saxon Street) and Somerset Lane are common elements and owned by [Falcon Ridge][.]

On April 26, 2023, the Bellomys filed their Answer and Affirmative Defenses to [Falcon Ridge's] Complaint for Declaratory Judgment, which included a counterclaim for declaratory relief. In their counterclaim, the Bellomys sought the court's

5

declaration that they are the sole owners of all property as described in the deeds dated October 27, 2020, and September 28, 2021, and that said real estate was not subject to any covenant, condition or restriction enumerated in the Falcon Ridge DCR.[10] Subsequently, on June 4, 2024, the Bellomys filed a motion for summary judgment as to their claim for declaratory relief. In said motion, the Bellomys argued that they were entitled to the following judgments:

A. That the Bellomys own Lots 52, 53, 54, 89, 90, and 91, as depicted on the Hilltop Manor plat of subdivision, free and clear of the [Falcon Ridge DCR], including the covenant to pay assessments to the [Falcon Ridge] for the costs of upkeep of the common elements of Falcon Ridge.

B. That the Bellomys (i) own Lot 94 near the entrance of Falcon Ridge (ii) free and clear of the [Falcon Ridge DCR], including the covenant to pay assessments to the [Falcon Ridge] for the costs of upkeep of the common elements of Falcon Ridge.

C. That the [Falcon Ridge] has not proved that it owns the land on which the Falcon Ridge entrance sign is located.

D. That the Bellomys have a reserved right of way for access through the "streets known as Saxon Place (which consists of Circle Drive, Hastings Street, Saxon Street) and Somerset Lane subject only to the nonexclusive rights of Falcon Ridge lot owners to use them for access to and from their lots.

E. With respect exclusively to the Bellomys' counterclaim, the Bellomys are entitled to summary declaratory judgment that

---

[10] On July 7, 2023, Crazy Mountain Cycles, LLC, ("CMC") filed a motion to intervene in the underlying case and for leave to file its answer and counterclaim against Falcon Ridge. CMC was the owner of multiple lots contained in Plat 6995 and sought declaratory judgment that the Declaration of Covenants and Restrictions for Falcon Ridge did not apply to the lots owned by CMC. By joint agreed order, CMC was dismissed from the underlying matter and is not restricted by the Declaration of Covenants and Restrictions for Falcon Ridge. CMC is not involved in this appeal and its involvement in the underlying case is immaterial to our decision on appeal.

Falcon Ridge is not a common interest community under the
[Uniform Act].

On June 4, 2024, Falcon Ridge filed a motion for summary judgment on its claim for declaratory relief. As to its dispute with the Bellomys, Falcon Ridge argued that the nature park, stone and brick entranceway, and the entrance road to Falcon Ridge are all common elements of Falcon Ridge; that the Falcon Ridge Declaration of Covenants was intended to apply to all units; and that Falcon Ridge's streets are common elements to the planned community. The circuit court heard the arguments of both parties as to their competing motions for summary judgment on November 7, 2024.

On April 4, 2025, the circuit court entered its order granting Falcon Ridge's motion for summary judgment. Specifically, the court found that the "ownership of the portion of Lot 94 that was previously used by the residents of Falcon Ridge as a nature park and the portion that contains the Falcon Ridge sign" did not lie with the Bellomys. The circuit court's order also states that the September 28, 2021, deed, upon which the Bellomys claim entitlement to said property, was prepared without the benefit of a title search, and had such a search been performed, "the preparer would have seen that this portion of land did not belong to the conveying parties as of September 18, 2007." Moreover, the circuit court noted the Bellomys' attendance at prior Falcon Ridge homeowners' association meetings at which ownership and maintenance of the subject property was discussed. According to the circuit court's order, the Bellomys' attendance at

7

these meetings was evidence that they knew of Falcon Ridge's ownership of the property at issue.

As to the application of the Falcon Ridge DCR to the Bellomys' property, the circuit court found that the properties conveyed in the October 27, 2020, and September 28, 2021, deeds are subject to the Falcon Ridge DCR because they clearly state that all lots purchased by the Bellomys were "part of the Falcon Ridge [s]ubdivision." On April 7, 2025, the Bellomys filed a motion to alter or amend judgment and motion for stay before the circuit court. On June 30, 2025, the circuit court entered its order denying the Bellomys' motion to alter or amend judgment and motion to stay. It is from the April 4, 2025, and June 30, 2025, orders the Bellomys now appeal.

## II. STANDARD OF REVIEW

Appellate review of a circuit court's order granting a motion for summary judgment, pursuant to Rule 56 of the West Virginia Rules of Civil Procedure, is de novo. Syl. Pt. 1, *Painter v. Peavy*, 192 W. Va. 189, 451 S.E.2d 755 (1994). In conducting its de novo review, this Court is obligated to apply the same standard for granting summary judgment that was applied by the trial court, namely, that "[a] motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law."

Syl. Pt. 3, *Aetna Cas. & Sur. Co. v. Fed. Ins. Co. of New York*, 148 W. Va. 160, 133 S.E.2d 770 (1963).[11] The Supreme Court of Appeals of West Virginia ("SCAWV") has long held,

> [t]he standard of review applicable to an appeal from a motion to alter or amend a judgment, made pursuant to W. Va. R. Civ. P. 59(e), is the same standard that would apply to the underlying judgment upon which the motion is based and from which the appeal to this Court is filed.

Syl. Pt. 1, *Wickland v. American Travellers Life Ins. Co.,* 204 W. Va. 430, 513 S.E.2d 657 (1998). With these standards in mind, we now address the Bellomys' arguments on appeal.

## III. DISCUSSION

---

[11] Both parties filed respective motions for summary judgment on June 4, 2024. On appeal, the Bellomys cite the appropriate standard of review for a circuit court's ruling on a motion for summary judgment. In contrast, Falcon Ridge cites the standard of review for judgment arising from a bench trial. However, in a letter to this Court dated March 5, 2026, the Bellomys' counsel advised the Court that:

> 4. Notwithstanding statements and argument to the contrary in their briefs filed with this Court and during oral argument, Petitioners and Respondent hereby stipulate . . . that <u>no</u> bench trial took place during the proceedings below in the [c]ircuit [c]ourt and that no bench trial was requested by either of the parties in the proceedings below.

> \* \* \*

> 6. Petitioners and Respondent hereby respectfully assert to this Court that the applicable standard of review of the Final Order and the Rule 59(e) Order is *de novo*, in accordance with the decisions of the Supreme Court of Appeals of West Virginia and of the ICA. *See, e.g.* "A circuit court's entry of summary judgment is reviewed *de novo*." Syl. Pt. 1, *Painter v. Peavy*, 192 W. Va. 189, 451 S.E.2d 755 (1994).

9

In their appellate brief the Bellomys assert eleven assignments of error. However, as multiple of these assignments of error address the same core substantive issues, we have consolidated and restated said assignments for purposes of this opinion. *See Tudor's Biscuit World of Am. v. Critchley*, 229 W. Va. 396, 402, 729 S.E.2d 231, 237 (2012) (stating the general proposition that related assignments of error may be consolidated for ruling); *Jacquelyn F. v. Andrea R.*, No. 16-0585, 2017 WL 2608425, at *1 n.2 (W. Va. June 16, 2017) (memorandum decision) (restating assignments of error where they involve clearly related issues); *Perry v. Ravenscroft*, No. 24-ICA-134, 2024 WL 5002991, at *3 (W. Va. Ct. App. Dec. 6, 2024) (memorandum decision) (consolidating and restating petitioner's assignments of error on appeal).

Restated, the Bellomys argue that the circuit court erred by (1) failing to properly apply the Uniform Act, (2) failing to correctly apply West Virginia Code § 36-3-11 (2020), (3) failing to apply the clear language of the deeds, (4) committing abuse of its inherent judicial power, and (5) failing to make sufficient findings of fact and conclusions of law.

We begin our review with a consideration of the application of the Uniform Act to the instant case. Generally, we note that, as expressly set forth in West Virginia Code § 36B-1-201, the Uniform Act applies to "all common interest communities created

within" West Virginia after July 1, 1986.[12] It is undisputed that the Falcon Ridge community was created in 1994, and is, accordingly, subject to the provisions of the Uniform Act.

West Virginia Code § 36B-2-101(a) (1986) establishes that common interest communities, such as Falcon Ridge, may be created pursuant to the Uniform Act "only by recording a declaration executed in the same manner as a deed[.]" The declaration "must be recorded in every county in which any portion of the common interest community is located and must be indexed in the grantee's index in the name of the common interest community and the association and in the grantor's index in the name of each person executing the declaration." Further, West Virginia Code § 36B-2-105 establishes that an enforceable declaration, under the Uniform Act, must contain "[a] legally sufficient description of the real estate included in the common interest community." W. Va. Code § 36B-2-105(a)(3). The Bellomys now argue that the circuit court erred in finding the Falcon Ridge DCR applies to restrict their property, as the Falcon Ridge DCR does not sufficiently meet the requirements to establish a common interest community under the Uniform Act. We agree. [13]

---

[12] West Virginia Code § 36B-1-201 applies to all common interest communities created within this state except as provided by West Virginia Code §§ 36B-1-202 and -203, neither of which are applicable to the underlying facts.

[13] The Bellomys also argue the Falcon Ridge DCR must also contain a statement of the maximum number of units that the declarant reserves the right to create per West Virginia Code § 36B-2-105(a)(4). However, because we find that the Falcon Ridge DCR

Here, the Falcon Ridge DCR does not provide a legally sufficient description of the real estate included in Falcon Ridge and, instead, simply refers to "Schedule A-1" for the description of the real estate to be included. However, Schedule A-1 was not attached to the Falcon Ridge DCR filed in the office of the Mercer County Clerk and was not made part of the record on appeal. Given the absence of "Schedule A-1" to the Falcon Ridge DCR filed in the Mercer County Clerk's office, we agree with the Bellomys and find there is no evidence to support a conclusion that the Falcon Ridge DCR contained a legally sufficient description of the property. Thus, the circuit court's finding that the absence of a real estate description document in the Falcon Ridge DCR is immaterial to the determination of the Bellomys' property interests is clearly wrong in view of the plain language of West Virginia Code § 36B-2-105(a)(3).[14]

Citing the SCAWV's opinion in Syl. Pt. 3, *Jubb v. Letterle*, 185 W. Va. 239, 406 S.E.2d 465 (1991) (internal citations omitted), Falcon Ridge maintains that Schedule A-1 was unnecessary for establishment of a common interest community, and argues that "[t]he fundamental rule in construing covenants and restrictive agreements is that the

---

fails to meet the requirement of West Virginia Code § 36B-2-105(a)(3), we find it unnecessary to address this argument on appeal.

[14] Further, it is clear from the plain language of the September 18, 2007, deed between SCC and Falcon Ridge, and from subsequent conveyances discussed below from SCC and Mark Shoemaker and Rhonda Shoemaker to third-party grantees, that only the western portion of Lot 94, along with only the streets named within the September 18, 2007, deed, were conveyed to Falcon Ridge.

intention of the parties governs. That intention is gathered from the entire instrument by which the restriction is created, the surrounding circumstances and the objects which the covenant is designed to accomplish."[15] In *Jubb*, part of a 131-acre property was sold with approximately 42 acres retained for development of a subdivision known as Mountainaire Village. As part of the proposed Mountainaire Village common interest community, a development firm submitted proposed engineering drawings depicting roads, water lines, sewer lines, lots, and layout to be encompassed by the subdivision. A restrictive covenant declaration was filed in 1982 indicating restrictions would be applicable to Mountainaire Village and referenced the engineering drawings created by the development firm as being the scope and character of the subdivision.[16]

Similar to the underlying case, no plat map or drawing was placed on file with the county clerk's office in *Jubb*. However, unlike the instant case, the parties in *Jubb* produced the engineering drawings during discovery. While Falcon Ridge's reference to Syllabus Point 3 in *Jubb* is accurate, we do not find Syllabus Point 3 instructive of whether a declaration, under the Uniform Act, meets the statutory requirements, as these requirements did not exist when the subdivision in *Jubb* was created. Further distinguishing the instant case from *Jubb* is the fact that the parties in *Jubb* were able to produce the

---

[15] At the time of the creation of the common interest community in *Jubb*, the Uniform Act was not adopted by West Virginia.

[16] The Uniform Act, with regards to planned communities, was enacted in 1986. S.B. 102, 1986 Gen. Assemb., Reg. Sess. (W. Va. 1986).

equivalent of the missing Schedule A-1.[17] Accordingly, we now find that, with respect to the Bellomy property, the Falcon Ridge DCR fails to meet the requirements of West Virginia Code § 36B-2-105(a)(3) and is unenforceable under the Uniform Act.

While we find that the Falcon Ridge DCR by does not encumber the Bellomys' property, we acknowledge that it is possible the Bellomys' property could have been subject to the covenants and restrictions of the Falcon Ridge DCR, but only if such language was contained in their respective deeds and chain of title. For example, a 2013 deed between Mark Shoemaker and Jonathan Phillips and Stephanie Phillips, husband and wife, contains restrictive language which specifically references the Falcon Ridge DCR. Specifically, the 2013 deed states

> [a]s pertains to Lots 59, 92, and 93 only, this conveyance is subject to a Declaration of Protective Covenants and Restrictions dated November 19, 1978, recorded in Deed Book 572 at Page 225 and supplemented by instrument dated May 16, 1979, recorded in Deed Book 575 at Page 288, as amended by a Declaration of Covenants, Conditions and Restrictions for Falcon Ridge Subdivision of record in Deed Book 750, at Page 110. It is the intention of the party of the first part that Lots 60, 61, and the western portion of Lot 62 conveyed herein shall not be subject to the aforementioned covenants and restrictions.

---

[17] On appeal, the Bellomys argue that the adoption of the Uniform Act abrogated the SCAWV's decision in *Jubb*. We decline to make such a broad ruling. In *Jubb*, the SCAWV did not address whether the declaration creating a subdivision was valid, as the Uniform Act was not in effect at the time *Jubb* was decided. Rather, *Jubb* decided whether property that fell within the area designated by the engineering drawing was subject to restrictive covenants.

Another example is contained in the 2010 deed between Mark Shoemaker and Rhonda Shoemaker and Sheila L. Hall which specially encumbers Lot 12 to be subject to the covenants and restrictions contained in the Falcon Ridge DCR.[18] However, neither the October 27, 2020, nor the September 28, 2021, deeds conveying the subject properties to the Bellomys contain a reference to the Falcon Ridge DCR. Further, the February 27, 2008, deed from SCC to Mark Shoemaker and Rhonda Shoemaker does not convey the properties subject to the Falcon Ridge DCR. Therefore, we conclude that the property at issue obtained by the Bellomys is not subject to the covenants and restrictions contained in the Falcon Ridge DCR, as the deeds to such property did not contain the necessary description of the property in the Declaration, nor are the properties conveyed with specific language binding these properties to the covenants and restrictions within the Falcon Ridge DCR. Accordingly, we reverse the circuit court's findings in this regard.

In their second assignment of error, the Bellomys contend the circuit court erred in applying West Virginia Code § 36-3-11 to divest the Bellomys of their title to the eastern portion of Lot 94, as well as their right of way through Falcon Ridge's streets for utility, vehicular, and pedestrian access to their property outside of Falcon Ridge. We

_____

[18] The 2010 deed specifically states

[t]his conveyance is subject to a Declaration of Protective Covenants and Restrictions dated November 19, 1978, recorded in Deed Book 572 at Page 225 and supplemented by instrument dated May 16, 1979, recorded in Deed Book 575 at Page 288, as amended by a Declaration of Covenants, Conditions and Restrictions for Falcon Ridge Subdivision of record in Deed Book 750, at Page 110.

15

agree. West Virginia Code § 36-3-11 applies in instances of an obvious descriptive error in a deed. An obvious description error includes:

> (i) An error transcribing courses and distances, including the omission of one or more lines of courses, and distances or the omission of angles and compass directions;
> (ii) An error incorporating an incorrect recorded plat or a deed reference;
> (iii) An error in a lot number or designation; or
> (iv) An omitted exhibit supplying the legal description of the real property thereby conveyed.

W. Va. Code 36-3-11(a)(4)(D).

In the present case, the Bellomys received two deeds to the property at issue. The first deed dated October 27, 2020, contained no reference to Lot 94. The second deed, dated September 28, 2021, included language conveying the eastern portion of Lot 94. The second deed did not meet the requirements of West Virginia Code § 36-3-11(a)(4)(D) to be considered an obvious descriptive error, as it did not include a transcription course and distance error, an error of an incorrect plat or deed reference, an error in a lot number or designation, or an omitted exhibit.

Despite this finding, we find no need to void the September 28, 2021, deed. West Virginia requires very little in way of deed formation.[19] West Virginia Code § 36-3-

---

[19] "No particular formal words of grant are necessary to the validity of a deed. If the intention to grant or convey the real estate, or an interest therein, clearly appears from the deed of conveyance, it will be as effective as though formal words of grant were used." Syl. Pt. 2, *Lilly v. Raleigh Hardware Co.*, 90 W. Va. 607, 111 S.E. 592 (1922).

16

5 only requires that a deed contain the date of conveyance, names of parties, consideration, a description of the property, and witness to the signature. Thus, the September 28, 2021, deed serves as a conveyance of the eastern portion of Lot 94 because the information required by West Virginia Code § 36-3-5 is contained within the deed, even though it failed as a corrective deed.[20] Further, we note that the September 18, 2007, deed between SCC and Falcon Ridge had already conveyed "the western portion of Lot 94 over which the right-of-way from Circle Drive presently exists[.]" Accordingly, we find that the circuit court erred in applying West Virginia Code § 36-3-11 to divest the Bellomys of their title to the eastern portion of Lot 94.

In their third assignment of error, the Bellomys argue that the circuit court erred in failing to apply the clear language of the deeds at issue, specifically with regard to ownership of rights-of-way through Falcon Ridge for utility, vehicular and pedestrian access. The circuit court found the Bellomys did not own any streets or easements in Falcon Ridge. The circuit court reasoned that the streets were granted to Falcon Ridge as common elements in the Falcon Ridge DCR. However, the September 18, 2007, deed between SCC and Falcon Ridge explicitly "reserve[d] an easement for ingress, egress and utility lines for itself, its assigns and successors across the streets so conveyed herein." This explicit reservation was subsequently passed to SCC's successors-in-interest, i.e. the Bellomys.

---

[20] One cannot convey a greater right or interest in real property than one lawfully owns. *See generally* W. Va. Code 36-1-10; *Wellman v. Tomblin*, 140 W. Va. 342, 84 S.E.2d 617 (1954).

17

Therefore, we find the circuit court erred insofar as it found the Bellomys did not hold a valid easement of ingress, egress and utility lines across the streets conveyed to Falcon Ridge in the September 18, 2007, deed.

In their remaining assignment of error, the Bellomys argue the circuit court committed abuse of its inherit judicial powers by visiting Falcon Ridge without notice to the parties and after the close of discovery and by granting injunctive relief. We find no such error. The Bellomys' argument in this regard is skeletal at best. *See State ex rel. Hatcher v. McBride*, 221 W. Va. 760, 766, 656 S.E.2d 789, 795 (2007) ("[a] skeletal 'argument,' really nothing more than an assertion, [and] does not preserve a claim .... Judges are not like pigs, hunting for truffles buried in briefs.") (internal citation omitted). "In the absence of such supporting arguments or authority, we deem these assignments of error to have been waived." *Id.* The Bellomys cite no direct authority in support of their position (citing only one case from the State of Nebraska) and do little more than simply assert the actions were "highly improper." Moreover, regarding the granting of injunctive relief, such argument is moot as we have found above that the property obtained by the Bellomys is not burdened by the covenants and restrictions contained in the Falcon Ridge DCR.[21]

---

[21] The Bellomys also argue that the circuit court orders of April 4, 2025, and June 30, 2025, failed to make sufficient findings of fact and conclusions of law. Here, we find the orders at issue were sufficient to permit meaningful appellate review.

## IV. CONCLUSION

Based on the foregoing, we find the circuit court erred in ordering property owned by the Bellomys to be subject to the Falcon Ridge DCR and erred in finding the Bellomys do not own an easement across the streets own by Falcon Ridge. Therefore, we reverse the April 4, 2025, and the June 30, 2025, orders and remand this matter to circuit court for additional proceedings consistent with this decision.

Reversed and Remanded.