# CHARLESTON.

B. Z. CARDEN *et al. v.* W. F. BUSH *et al.*

(No. 6604)

Submitted November 12, 1930.  Decided November 18, 1930.

*Thomas N. Read,* for appellants.
*A. D. Daly,* for appellees.

HATCHER, JUDGE:

Title and rights relating to a lot in the city of Hinton, West Virginia, are the subjects of this suit.  A chronological state-

ment of the material deeds and agreements follows: First. On April 1, 1924, Z. V. Burks conveyed the lot to E. L. Lewis and May T., his wife. Second. On the same day Lewis and wife conveyed the lot to James M. Miller, Trustee, to secure a balance of $4,925.00 on the purchase price. Third. On July 30, 1925, Lewis and wife entered into an agreement, with B. Z. Carden and B. G. Grimmett, who owned an adjoining lot, whereby Lewis and wife agreed not to erect a structure over fourteen feet in height on a certain portion of their lot, and Carden and Grimmett deeded Lewis and wife a half interest in a party wall between the lots, and a strip of land two inches wide along the lot boundary. Fourth. Lewis and wife conveyed their lot to T. L. Read, on August 21, 1926, a part of the consideration therefor being the promise of Read to pay to Burks the balance of $3,430.00 then due. Fifth. On June 23, 1927, Burks assigned to T. N. Read unpaid notes of Lewis and wife amounting to $3,120.00, together with the trust deed securing the notes. Sixth. The notes not being paid, T. N. Read had Miller, Trustee, sell the lot, and defendant, W. F. Bush, became the purchaser at $5,300.00, paid in cash. Bush received a deed from Miller on August 29, 1927, which included only the original lot, no mention being made of the two inch strip and the party wall right. All of the above instruments were promptly recorded.

Bush entered upon the lot and commenced the erection of a three-story structure. Before this, Carden and Grimmet, relying on their agreement with the Lewises, had erected a building on their lot which obtained light and air, above a height of fourteen feet from the ground, from over the Lewis property. Grimmett had then sold his interest to Mrs. Laura B. Hedrick, and she, with Carden, obtained an injunction restraining further erection of the building by Bush, and sought to have the deed to Bush set aside, the lot re-sold, first being offered subject to their rights, etc. The trial court found for plaintiffs, and defendants Bush and T. L. Read appeal.

. No brief is filed by appellants, but the error of this finding is obvious—it subordinates the trust deed executed by Lewis and wife to a subsequent agreement made by them to which neither Burks nor Miller, Trustee, was a party. The trust

deed, being recorded long prior to the agreement made by the Lewises with Carden and Grimmett, takes precedence over and is subject in no way to the agreement. Bush was an innocent purchaser for value at the trust sale, and took the title of the trustee just as the trustee received it in 1924, and free in every way from the agreement of 1925. See *Nagle* v. *Syer*, 150 Va. 508. It is not necessary to consider what effect, if any, notice of plaintiff's claims would have on the standing of Bush. He denies (without controversion) actual notice thereof and under our recording acts is not affected by constructive notice. Code, chapter 74, section 10, provides: "A purchaser shall not, under this chapter, or chapter 75 (Liens) be affected by the record of a deed or contract made by a person under whom his title is not derived." See the history and construction of this statute in *Hoult* v. *Donahue*, 21 W. Va. 294, 299, and see generally 23 R. C. L., subject "Records," sec. 68. Appellees rely on *Parsons* v. *B. & L. Assn.*, 44 W. Va. 335, which holds that a recorded agreement in relation to a lot wall binds subsequent purchasers. That case has reference, however, to subsequent purchasers from the parties to the agreement. It does not refer to a purchaser from one having a superior right to those making the agreement.

T. N. Read is the father and law partner of T. L. Read. Because of this kinship and partnership, appellees contend that the purchase of the Lewis notes by T. N. Read from Burks was in fact a payment on behalf of his son, which cancelled the debt and the lien securing it. Both T. N. and T. L. Read deny that such was the case. Their denial is supported by the fact that instead of taking a mere receipt from Burks for money paid, T. N. Read took an assignment to himself of property purchased. The fact that the Reads are so connected, alone, is not sufficient to overcome the evidence opposing the contention of the appellees.

Plaintiffs further contend that the trustee should have sold the lot subject to their rights, if such a sale would have brought a sufficient sum to satisfy the lien-secured debt. Even if this contention were abstractly sound, how could it affect the title of Bush as an innocent purchaser for value at a sale regularly

conducted? See generally 39 Cyc., subject Trusts, p. 559, *et seq.*

Plaintiffs charge that the appeal was improvidently awarded, on the theory that a decree entered July 17, 1928, and more than eight months before the appeal was granted, was final; and that the later decree, entered December 15, 1928, to which an appeal was allowed, was merely administrative. The former decree did not, in fact, set aside the deed to Bush, but merely directed "that any further proceedings under the sale made by James H. Miller, Trustee, to W. F. Bush * * * be held in abeyance pending a resale by said trustee who is hereby appointed a special commissioner for the purpose, which sale should be * * * subject to the conveyance and agreement between Carden and Grimmett and said Lewis of July 13, 1925," etc. The re-sale was satisfactory, and then on December 15th, for the first time, the court definitely revoked the deed to Bush.

The decree of the lower court is accordingly reversed, and the cause remanded.

*Reversed and remanded.*