**FILED**

**May 20, 2022**

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

*No.* 20-0863, *Laura Goddard v. Tyler Hockman and Emily A. Hockman*

**ARMSTEAD, Justice, dissenting:**

The majority opinion incorrectly concludes that the foreclosure by Jefferson Savings Bank ("JSB") "extinguished all prior covenants and restrictions that post-dated the execution of the deed of trust, and that [the foreclosure purchasers'] successor in interest, the petitioner, took the subject property free and clear of all such covenants and restrictions." Therefore, I must dissent.

The facts demonstrate that JSB held a Deed of Trust on the property in question and foreclosed upon those interests. At foreclosure, the property at issue was sold to Mr. and Mrs. Stephens. Mr. and Mrs. Stephens then sold the property to Petitioner. As the majority opinion notes, the Notice of this sale specifically referenced the plat recorded in the Office of the Clerk of the County Commission of Jefferson County in Plat Book 24, at Page 1. Beyond that, the deed of correction to Petitioner from the Stephens also specifically referenced the same recorded plat – "LESS AND EXCEPTING Lots 1, 2, 3, 4, 5, 6, 7, and 8, Falcon Ridge Farms, as shown on the plat recorded in Plat Book 24, at Page 1." The fact that the seminal deed in this case refers back to this Plat is the key to understanding that Petitioner had record notice in addition to actual notice of the existence of the subdivision.

1

Petitioner was on record notice from the reference to the Plat in her deed to the property in question. In Syllabus Point six, the majority opinion correctly cites the law on this point.

> When lands are laid off into lots, streets, and alleys, and a map plat thereof is made, all lots sold and conveyed by reference thereto, without reservation, carry with them, as appurtenant thereto, the right to the use of the easement in such streets and alleys necessary to the enjoyment and value of such lots.

Syllabus Point 2, *Cook v. Totten*, 49 W. Va. 177, 38 S.E. 491 (1901). Petitioner knew the property was laid off into lots and her corrective deed from the Stephens clearly made reference to the recorded plat. This was sufficient to put her on record notice of the existence of the subdivision when she purchased the property. Further, the law of inquiry notice required Petitioner to do more than merely rest on her laurels:

> 1. Whatever is sufficient to direct the attention of a purchaser to prior rights and equities of third parties, so as to put him on inquiry into ascertaining their nature, will operate as notice.

> 2. A party is not entitled to protection as a bona fide purchaser, without notice, unless he looks to every part of the title he is purchasing, neglecting no source of information respecting it which common prudence suggests.

> 3. That which fairly puts a party on inquiry is regarded as sufficient notice, if the means of knowledge are at hand; and a purchaser, having sufficient knowledge to put him on inquiry, or being informed of circumstances which ought to lead to such inquiry, is deemed to be sufficiently notified to deprive him of the character of an innocent purchaser.

4. If one has knowledge or information of facts sufficient to put a prudent man on inquiry, as to the existence of some right or title in conflict with that which he is about to purchase, he is bound to prosecute the same, and to ascertain the extent of such prior right; and, if he wholly neglects to make inquiry, or, having begun it, fails to prosecute it in reasonable manner, the law will charge him with knowledge of all facts that such inquiry would have afforded.

Syllabus Points 1 - 4, *Pocahontas Tanning Co. v. St. Lawrence Boom & Mfg. Co.*, 63 W. Va. 685, 60 S.E. 890 (1908). Because Petitioner had both actual and constructive notice of the subdivision and she failed to investigate when placed upon inquiry, she cannot now say that she took her deed from the Stephens free and clear of all encumbrances, including the covenants, internal road easements, and anything contained on that plat. These are very important facts to which the majority opinion gives little credence.

Notably, the plat contained the following information:

10. A HOMEOWNER'S ASSOCIATION MUST BE ESTABLISHED WITHOUT DELAY AS SOON AS 50% OF PROPERTIES ARE SOLD. MEMBERSHIP IN THE ASSOCIATION IS MANDATORY FOR ALL PROPERTY OWNERS WITHIN THE SUBDIVISION. ALL DEVELOPERS SHALL DEDICATE ALL COMMON LANDS (SWM BASIN, ROADS, RIGHTS-OF-WAY, ETC.) TO THE HOMEOWNER'S ASSOCIATION.

11. A COMMON INTEREST OWNERSHIP AGREEMENT MUST BE ESTABLISHED TO PROVIDE FOR THE MAINTENANCE OF COMMONLY-OWNED LAND, INCLUDING, BUT NOT LIMITED TO THE PRIVATE ACCESS ROADS WITHIN THE SUBDIVISION. THIS COMMON INTEREST OWNERSHIP AGREEMENT MUST BE DEVELOPED IN ACCORDANCE WITH THE

3

UNIFORM COMMON INTEREST OWNERSHIP ACT OF WEST VIRGINIA.

Additionally, the Final Plat contains this notation – SEAL – "Approved Subdivision" "Sherry Kelley" "Planning" "(03/16/07)" and shows the internal roads and common area that all owners in the subdivision were permitted to use.

Thus, even if the Stephens were Bona Fide Purchasers as the majority opinion finds, when they sold the property to Petitioner, the deed they gave Petitioner placed her upon record notice of the existence of the common area, the covenants, easements, and the fact that the Plat had been approved by the planning commission. This information would require Petitioner to inquire further to determine what these notations meant. *See* Syllabus Points 1 -4, *Pocahontas Tanning*.

In addition, Petitioner had actual notice of the subdivision. "Actual knowledge is 'notice.'" John W. Fisher, *The Scope of Title Examination in West Virginia*, 98 W. Va. L. Review 449, 493-4 (1996). Her knowledge came from her prior purchase of Lot 8, which deed specifically referenced the same plat which shows the internal road easements and notes the covenants and restrictions for the subdivision. When she purchased Lot 8 from Wolverine Investments, LLC, she fully knew that lot was part of the subdivision, encumbered by covenants, restrictions, and easements. The majority opinion cites to Syllabus Point 2 of *Carden v. Bush*, 109 W. Va. 655, 155 S.E. 914 (1930), for the proposition that the Stephens' were bona fide purchasers of the subject property, thereby

4

negating any notice from Petitioner's demonstrated knowledge of the existence of the subdivision. However, because Petitioner had notice of the subdivision, *Carden* is inapplicable in this case. Petitioner, apart from not having purchased the subject property at the trustee's sale, simply cannot be considered a bona fide purchaser. A bona fide purchaser is a *wholly innocent party* who, despite having used reasonable diligence, is unable to ascertain any conflicting rights to the subject property and has no actual notice of any such conflicts. *See* Syllabus Point, 2, *Pocahontas Tanning*. Here, Petitioner had both actual and record notice of the existence of the subdivision, thereby eliminating her as a bona fide purchaser. *Carden* does not foreclose the application of the subdivision covenants, restrictions, and easements against Petitioner.

Further, the majority opinion relegates to a footnote that all other owners in the subdivision have released all right and title to the property in question in exchange for the right to use the road easements:

> The respondents were the only named defendants, as all other property owners in the subdivision have entered into agreements whereby they waived any right, title and interest they might have in the subject property in return for the petitioner's grant of "a right of way in common with her over the access easement as shown on the aforesaid [Final Plat] for access to and from their lots subject to the other matters set forth in the Covenants concerning the obligation to maintain Falcon Ridge Drive."

Why would the Petitioner have any need for these agreements, particularly relating to those who purchased lots after the foreclosure sale? The answer is as obvious as it is simple –

Petitioner knew she did not own the subject property free and clear – as the majority finds – and needed to acquire interests from other property owners to clear clouds on title.

For these reasons, I respectfully dissent.